IN THE UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF PENNSYLVANIA
CASE NO.:


ELLA CARD, KEN SWENSON, CINDY CARD &
LADONNA CARD,
                    Plaintiff,

**DEMAND JURY TRIAL**

vs.


NICHOLAS TURNER, President of the Vera Institute

JOHN HOLT, Attorney for the Vera Institute

KIMBERLY GEORGE, Director for the Vera Institute

LAURA NEGRON, Director for the Vera Institute

LISA FRIEDMAN, Court Evaluator

ALEXANDRA SCHONFELD, Court Evaluator

JUDGE BETSY BARROS

JUDGE LEON RUCHELSMAN

CHRISTINE MOONEY, Court Appointed Attorney for Ella Card

PAUL O'BRIEN, Attorney for Ella Card

DAVID VAN LEEUWEN, Attorney for Petitioners

BONNIE BERNSTEIN, Attorney for Raymond and Kermit Card

JULIE STOIL FERNANDEZ, Attorney for Raymond and Kermit Card

RAYMOND CARD, Estranged son of Ella Card and Guardian of her Property

KERMIT CARD, Estranged son of Ella Card and Guardian of her Property

STATE OF NEW YORK

                    Defendant

FILED
HARRISBURG, PA

JUL 2 2 2021

PER ___ ISn _____
                DEPUTY CLERK


**EMERGENCY COMPLAINT: PLAINTIFFS REQUEST EMERGENCY DECLATORY RELIEF UNDER RULE 57 AND EMERGENCY INJUNCTION UNDER RULE 65**

  Plaintiffs ELLA RUBINA CARD (hereinafter, known as "Mrs. Card"), KEN SWENSON (son in

law), daughters CINDY CARD AND LADONNA CARD file this Emergency Complaint and Emergency

Declaratory Relief under Rule 57 and Emergency Injunction under Rule 65 to protect the assets and property of Mrs. Card and request this Honorable Court to Protect Mrs. Card's Civil Rights, which are being violated under 42 USC § 1983 and under the Color of Law 18 USC § 241 and 18 USC § 242 by a public official, by first Judge Betsy Barros and successor Judge Leon Ruchelsman, who is currently depriving Mrs. Card and Plaintiffs of their Liberty and Property without due process of law and been denied equal protection under the law. Prior to any hearings, Mrs. Card, and daughters (Cindy and LaDonna Card) who were intentionally denied an attorney of their choice, which is a structural defect (a constitutional error that affects the framework of the trial). The United States Supreme Court has held that the decision is not subject to a harmless error analysis, but tainted the entire capacity hearing, including ineffective assistance of counsel.

This case is Excellent Case of a Manifest Injustice, against a successful black woman who worked as a school teacher for 39 years and invested wisely. This case depicts a violation of Fundamental Rights, where Mrs. Card has been forced into a Guardianship against her will. It was recently discovered via investigation from Social Security that shows Mrs Card has been wrongfully ruled incapacitated on March 16, 2011, prior to ever entering a courtroom or guardianship hearing. EXHIBIT A. Judge Judge Betsy Barros without a medical doctor evaluation, and against New York Laws Public Health Article 29CC: Family Health Care Decision Act, Section 2994C, where Betsy Barros stated to Mrs. Card and daughter Cindy Card, **"You may not be incapacitated now, but when I get done with you, you will be incapacitated."** Mrs. Card has been Abused and Financial Exploited by the Vera Institute under Title 10 Chapter 2 Article 10 under 10 G.C.A. § 21002. The current guardians, Raymond and Kermit Card, who were appointed as such in an ex-parte hearing conducted on July 21, 2020, are trying to sell Mrs. Card's property. This judgment was obtained without proper service of process and is invalid. (see Feinstein v Bergner, 48 N.Y.2d 234, 239-241, 422N.Y.S2d 356, 397 N.E.2d 1161). Mrs. Card has been denied her Pension for the past ten years and denied her Social Security money for seven years. She has been denied her rental income etc and forced to live in Poverty even though, she had accumulated more than enough money to live comfortably after retirement on her own. We pray this Honorable Court will protect Mrs. Card. We will also show that all the orders of this Court are *void ab initio* under Federal Rules of Civil

Procedures Rule 60(b)(4). The lower court continues to have numerous *ex-parte* hearings violating Mrs. Card due process rights and the Fraud and Perjury committed to get Mrs. Card Social Security money by stating to the Social security Administration that Mrs. Card lives alone and has no family EXHIBIT A and was a product of fraud on the court under Federal Rules of Civil Procedures Rule 60(b)(3), and under 18 USC § 1961 Racketeering and other crimes that are currently being perpetrated against Mrs. Card.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1343 and § 2201.

2.      Jurisdiction exists in federal court for the claims set forth as the First Cause of Action 42 U.S.C. § 1983 – Violation of Civil action for deprivation of rights, 18 USC § 242 Deprivation of rights under color of Law, Hobbs Act 18 USC § 1951 & 371 Interference with commerce by threats, or violence Obtaining of Property "under color of official right" by public officials, Extrinsic Fraud under FRCP 60(b)(3)(4), 18 USC § 1961-1964 Racketeering Influence Corrupt Organization, Violation of the 14th Amendment of the United States Constitution, Denied Due Process, Violation of the 6th Amendment of the United States Constitution, denied Effective Assistance of Counsel and denied a Trial by Jury.

3.      Under FRCP Rule 38 we Demand a Trial By Jury and under the 7th Amendment of the United States Constitution.

4.      Under 28 U.S. Code § 1332(a), The claim is over $75,000.00. The Defendant seeks the return of her property; two apartment buildings, a store, all bank accounts, and other investments which the Vera Institute and guardians of record, openly refuse to return to Ella Card. The Defendant seeks monetary awards for damages, injury, and other awards that are just in this matter.

5.      Under 28 U.S. Code § 1332(a)(1), Diversity of Citizenship, Pennsylvania is the proper venue, for all claims asserted herein, where Pennsylvania has been Ms. Card's home for the past 7 years. Ms. Card has not lived in the state of New York for over ten years.

6.      Under 28 U.S. Code § 1441(1), The Vera Institute is a Corporation and is deemed to be a citizen of every State or foreign State, where it has principal business.

7.     Under 28 U.S. Code § 1441(2), Ms. Card has lived in Pennsylvania with her "Son in Law," Ken Swenson for over 7 years. Ken is the legal representative and Power of Attorney of Ella Card. The legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

8.     The crimes are interstate between New York and Pennsylvania. Ella Card is now 83 years old, the victim of many crimes that were committed by numerous Judges, lawyers, and others and therefore we believe that this case should remain where the victim resides because the Vera Institute and guardians of record, had taken her Social Security money.  They continue to take her New York Pension, rental income etc.

9.     We ask this United States District Court Middle District of Pennsylvania ensure this case remains in the state of Pennsylvania for two reasons: 1). To Avoid any actual or perceived conflict of interest as set forth herein as two New York judges are involved in this Racketeering Enterprise. 2) Could not get a fair in New York due to judicial corruption. Mrs. Card has suffered tremendously. She was forced to leave her New York home due to Vera's negligent in providing money for her basic needs and living expenses in accordance with Article 81. She has been and will be denied a fair and unbiased trail in New York even though she is fully competent and was never deemed to be incapacitated by any medical or psychiatric evaluations by the New York court.

10.     To send this case back to New York would be a Manifest Injustice and a violation of Fundamental Rights, Mrs. Card would not receive a fair hearing.

11.     Extrinsic fraud and fraud upon the court, occurred on the state level, therefore, making all state judgments invalid, concluding that res judicata cannot apply to the federal court decisions because the state level judgments were contaminated by extrinsic fraud and fraud upon the court.

12.     The venue of this action is properly in Hanover, PA—York County, Pennsylvania because Plaintiff, Mrs. Ella Card and Ken Swenson are residents of Pennsylvania for the past seven years. Plaintiffs reside at 445 Beck Mill Road Hanover, Pennsylvania 17331.

13.    Kermit Card is also a resident of Pennsylvania and is co-guardian of record for Mrs. Card's Property

as recorded from the July 21, 2020 *ex-parte* hearing, of which Mrs. Card and family were never notified.

*In this Lawsuit today we will prove beyond any reasonable doubt, Ella Card was always fully competent and never incapacitated, and that the Defendants, the Vera Institute and Judge Betsy Barros conspired to rule Ms. Card Incapacitated to Steal her entire estate in this Racketeering Enterprise, which was a product of Extrinsic Fraud and a Manifest Injustice. Judge Betsy Barros alone ruled Mrs. Card incapacitated without a medical doctor or a psychiatrist, as well as any clear and convincing evidence, which is in violation of New York State Law, Public Health Laws Article 29-CC: Family Health Care Decision Act Section 2994-C, and therefore under Federal Rules of Civil Procedure Rule 60(b)(4) the Guardianship of the Property of Mrs. Card is void ab initio. Furthermore, the first hearing which Mrs. Card and daughters attended, was in April of 2011, yet Judge Betsy Barros did not rule or file an order in this case till 8 months later on December 14, 2011, in violation of Article 81; the order must have been entered within 7 days of the hearing date and therefore again the Guardianship of the Property is void ab initio. Additionally Mrs. Card was no longer of resident of New York in December of 2011 therefore the Judge lacked jurisdiction and therefore perpetuated a void order.*

## STATEMENT OF THE CASE AND THE FACTS

14.    In the Complaint being file today, we will provide this Honorable Court with prima facie irrefutable

evidence that the Defendants engaged in a racketeering enterprise and criminal conspiracy to abuse and

exploit Plaintiff Mrs. Ella Rubina Card by violating her constitutional due process rights, in order to strip her

of her civil rights illegally and force her into a Guardianship in order to steal her life, liberty and property.

15.    The Plaintiff, Ella Rubina Card is an eighty-three (83) year old Black Woman, widower who use to

resided at 155 Saratoga Avenue in Brooklyn, New York, 11233, County of Kings. She had lived at this

address from 1972 to 2011, approximately thirty-nine years. Her husband of forty-two years (42), Raymond

Harrison Card Sr., died March 10th, 2001, a victim of the VIOXX medication. She has now lived with her

son in law Ken Swenson for the past ten years.

16.    Ella Card holds a bachelor's degree in Education from Medgar Evers College. She has also achieved

a master's degree in education from Adelphi University in Manhattan, NY. Ella Card has been an employee

of the New York State Educational System for thirty-nine years. She is now retired after a long, munificent,

and successful career. Ella Card has owned and overseen the management of four properties: The first at 155

Saratoga Avenue, the second at 161 Saratoga Avenue, a small store located at 161 Saratoga Avenue and her

home in Belize. Ella Card, being mentally sound, has, through legal and contractual documents, given these

properties to her beloved daughter; Cindy Rubina Card. Ella Card is the mother of four children: Raymond Harrison Card Jr., Kermit Card, LaDonna Card, and Cindy Rubina Card.

17.     Daughters, LaDonna Card is a Physician Assistant, Cindy Card is an Ordained Minister and cared for her parents, however, no matter how hard Ms. Card tried to raise her two sons and two daughters, going to Church on Sunday and spending quality time with them, Ms. Card's two sons, Raymond and Kermit Card have become lifetime abusers of alcohol, crack cocaine, attempted rape and domestic violence. EXHIBIT B In fact, in April of 2011, when the initial proceedings were held, Raymond Card was visibly drunk in court and smelled of alcohol. The addiction was so severe that one day Defendant Raymond Card pulled a gun on Plaintiff (sister) LaDonna Card high on crack and demanded money for drugs. EXHIBIT C

18.     On or about January 2011, Defendants, estranged sons of ten years, Raymond and Kermit Card filed for Guardianship over their mother, Mrs. Card for two reasons:

1. Because they were angry and jealous that Mrs. Card decided to leave her properties to her daughter Cindy Card, because Cindy has cared for her father while he was sick. Over the past 10 years Cindy Card spent her own money maintaining both homes in Brooklyn NY. She is a levelheaded and smart businesswoman like her mother.

2. Estranged sons for ten years, Raymond and Kermit Card wanted Mrs. Cards money. They had stolen thousands of dollars from Mrs. Cards bank accounts by moving funds using an illegal power of attorney, all while she was recovering from an injury. Both Raymond and Kermit Card have a long history of Crack Cocaine and Alcohol Abuse, domestic violence, child abandonment and attempted rape.  Neither qualify as guardians of her property under Article 81 Mental Hygiene Laws. Each have filed Bankruptcy multiple times. Mrs. Card is petrified of both Raymond and Kermit and has filed a Cease-and-Desist order against both her estranged sons, Julie Fernandez, and John Holt. All who represent threats to her peace of mind, and overall physical and mental well-being.

19.     In March of 2011, Lisa Freidman, the Court Evaluator and Judge Betsy Barros froze Ms. Card's bank accounts, froze her pension, her social security money, and left Ms. Card penniless. Judge Betsy Barros and Lisa Friedman refused to give Ms. Card money to buy food, refused to give her money to buy heating oil, to

heat her home and water and in exchange offered her T-Food coupons to buy food. She was freezing in her home with no heat, no hot water, and no money for food. More importantly, Judge Betsy Barros and Lisa Friedman wanted to ensure that Ms. Card would have absolutely no money to hire her own attorney for the capacity hearing and consistently denied her the right to her own attorney.

20.     On March 29, 2011, at 10:20pm, LaDonna Card wrote an email to her brother Raymond Card, where LaDonna Stated: I said to Kermit in Court that day that this was a big mistake and we should stop this NOW! Kermit stated: His response was that better the state take it all than give it to Cindy! Please see LaDonna's email to Raymond Card. **EXHIBIT D**

21.     The Vera Institute found out the net worth of Mrs. Card due to Kermit Card's moving of her physical bank account and transferring her mail to his New York residence utilizing his illegal, irrevocable Power of attorney. Vera would use this information to commit perjury against the Social Security Administration to get Mrs. Card Social Security benefits, United Federation of Teachers Pension, etc. **EXHIBIT A.** These are all federal crimes. There was no Guardianship over the person, **MRS. CARD FLED THE STATE OF NEW YORK, LIKE A RUNAWAY SLAVE.** The Vera institute would prey on Mrs. Card for the next 10 years stealing her Pension, Social Security money, rent for a total 8,000 to 10,000 dollars per month and kept Mrs. Card in Poverty, when she was always fully competent and never in need of a guardian.

22.     On April 26, 2011, in a hearing to determine incapacity, Judge Betsy Barros took Mrs. Card and Cindy Card in the judge's chambers and asked Mrs. Card, why don't you want Guardianship, Guardianship is good? Mrs. Card stated, "because I am not incapacitated." Judge Betsy Barros stated, **"You may not be incapacitated now, but when I get done with you, you will be incapacitated."**

23.     The capacity hearing of Ella Card was held on April 26, 2011, however, the Court did not rule on that hearing until December 14, 2011, close to eight (8) months or 228 days later, in violation of Article § 81.13, where the Vera Institute was appointed Guardianship over the Property, Index No. 10016/2011, with No Guardianship over the Person. Under Article § 81.13, a decision should have been rendered within (7) seven days from the April 26, 2011, capacity hearing. The fact that the ruling was 8 months later, voids the entire

capacity proceedings and termination of the guardianship, therefore the ensuing guardianship of the Property of Ella Card is **void ab initio.**

24.     Under Article § 81.13 Timing of hearing Unless the court, for good cause shown, orders otherwise, a proceeding under this article is entitled to a preference over all other causes in the court. Unless the court, for good cause shown, orders otherwise, the hearing or trial shall be conducted within the time set forth in subdivision (b) of section 81.07 of this article. A decision shall be rendered within seven days after the hearing, unless for good cause shown, the court extends the time period for rendering the decision. In the event the time period is extended, the court shall set forth the factual basis for the extension. The commission shall be issued to the guardian within fifteen days after the decision is rendered. Judge Barros never set forth the factual basis for the extension.

25.     In November 2017, Ella went to Social Security Administration in Pennsylvania to stop Vera Institute from taking her Social Security money, and for her to receive her Social Security check in Pennsylvania. After a brief examination, the Social Security Administration, found that Ella Card was competent and not incapacitated and immediately granted Ella Card her Social Security Benefits. The Social Security Administration called John Holt representing the Vera Institute and ordered him to return all Social Security money taken by the Vera Institute since 2011. To date, John Holt has not returned this money to Ella Card. The Social Security Administration is investigating the Vera Institute for Fraud and why they resigned as guardians.

26.     On July 21, 2020, the Vera Guardianship Institute made an application to resign from Guardian of the Property of Ella Card in another *ex-parte*.

27.     Petitioners were not made aware that such proceedings were moving forward to appoint Defendants as successor Co-Guardians, and only a short time ago were they able to get a copy of a proposed notice of settlement and unsigned order, seeking to appoint Defendants as successor guardians of Ms. Ella Card property. A copy of the Notice of Settlement is annexed hereto and made a part hereof. **EXHIBIT E**

28.    On July 21, 2020, another *ex-parte* hearing was held with John Holt, attorney for the Vera Institute, recommending that Raymond and Kermit Card should be guardians over the property of Ella Card, John Holt stated:

> "After the court heard testimony from John Holt Esq Director Vera Guardianship project regarding the difficulties maintaining the existing guardianship and recommending a replacement guardian and Raymond and Kermit Card testifying, I support of their nomination and having been allocated as to their willingness, ability and qualifications to serve and it appearing satisfaction of the court and stated that Raymond and Kermit card are qualified to replace the Guardian and have expressed willingness to do so whatever necessary of protection of Ella Card property."

29.    In another *ex-parte* hearing and Guardianship of Ella Card's property,  Hon. Leon Ruchelsman, signed an order and granted Guardianship to Raymond and Kermit Card. In this hearing, attorney Paul O'Brian, was supposed to represent Ella Card but quit immediately prior to the hearing. A breach of fiduciary duty and breach of contract and a violation of due process.

30.    In June 2011, Ella Card spoke to Barbara Hollingsworth at the Washington Examiner, in Washington, DC, protesting this Fraudulent Guardianship. On December 20, 2011, in the Washington Examiner, Barbara Hollingsworth wrote, "Retired School Teacher Fights for Her Freedom," and states "Meanwhile, the feisty Card -- who clearly demonstrated her mental and verbal acuity in an interview with this newspaper continues to fight for her freedom. **EXHIBIT F**

31.    On December 13, 2011, Barbara Hollingsworth called Karen Goldstein, at the Vera Institute, (the Justice general counsel), about Ella Card and said "Ella was clearly Competent when I interviewed her earlier today" she said she would look into the issue and never received a response. Immediately after Barbara Hollingsworth contacted the Vera Institute, Karen Goldstein contacted Judge Betsy Barros and the next day, Judge Betsy Barros ruled on the Guardianship over the property on December 14, 2011, (8) eight months after the capacity hearing and issued Guardianship over the property "Only," not over the person.

32.    Also in June of 2011 Ella Card, along with many other victims of guardianship abuse from across the country, marched on Washington, DC and spoke before the Congressional Listening session hosted by Congressman Ted Poe of Texas. Ella Card was the only victim who spoke for herself further evidencing her

physical, cognitive, and mental health. Pictures of Ella in Washington DC testifying in Congress about these Human Rights Violations. **EXHIBIT G**

33.     On October 29, 2011 Ella Card was examined by Physician Robert Sarhan, MD and stated that she was well oriented, to time and place, intact short term and long-term memory, her judgment is within normal limits and her mental status is well within normal limits. She is fully Competent to make all decisions for herself, she is not incapacitated.  **EXHIBIT H.**   Then again, on May 12, 2012, Ella Card was examined by Physician Robert Sarhan, MD with the same conclusions.  **EXHIBIT I**

34.     On March 5, 2013, Dr Pedro Arriaga stated that Ella Card was alert and oriented, with clear capacity and ability to make decisions on her own behalf. **EXHIBIT J**

35.     On August 5, 2015, Ella Card was seen by Dr. Kent Shinback, a Board-Certified Psychiatrist in the State of New York, stating that Ella Card is fully mentally Capacitated. **EXHIBIT K**

36.     In 2017, the Pennsylvania Social Security Administration seen how competent Ella was and stopped sending her Social Security check to the Vera Institute and gave it back to Ella.

37.     On February 14, 2018, Ella Card was evaluated by Dr Kent Shinbach, MD a Board-Certified Licensed Psychiatrist in the state of New York again and stated: **EXHIBIT L**

> On Mental Status Evaluation, Ms. Card was alert, well oriented woman to be her stated age. She displayed intact memory, both recent and remote with no suggestion of confusion at any point in this interview. Her judgment was within normal limits. Essentially, I find her mental status, as well, to be with normal limits in all her parameters for her age. Ms. Card demonstrated fully intact mental capacity and for the purposes of directing the maintenance and ultimate disposition of her estate in her own best interest.

**38. ELLA CARD HAD TO FLEE THE STATE OF NEW YORK LIKE RUNAWAY SLAVE** because if the Vera Institute would have caught Ella, she would have been drugged with psychotropic drugs and murdered, after the entire estate was stolen. Guardianships of the Elderly Infirmed: A National Disgrace, Congressman Claude Pepper, and the One Hundredth Congress, GUARDIANSHIPS Cases of Financial Exploitation, Neglect, and Abuse of Seniors Report to the Chairman, Special Committee on Aging, U.S. Senate, Retired NYC School Teacher Fights for her Freedom Washington Examiner, Barbara Hollingsworth.

**THIS COURT, THE VERA INSTITUTE AND OTHERS HAVE COMMITTED
THE FOLLOWING FEDERAL CRIMES AGAINST ELLA CARD**

**I. ARGUMENT
THE COURT VIOLATED MRS. CARD'S CIVIL RIGHTS AND
DUE PROCESS RIGHTS THE FOURTEENTH AMENDMENT, WHICH PROHIBITS THE
STATES FROM DEPRIVING "ANY PERSON OF LIFE, LIBERTY, OR PROPERTY, WITHOUT
DUE PROCESS OF LAW."**

39.     Under New York MHL Article § 81.01, the LEAST RESTRICTIVE means to preserve and protect

the rights of the person (see *Matter of Michael J.N.,* 2017 NY Misc. LEXIS 5104). The intention of the

drafters of Article 81 was that a guardianship be used as a LAST RESORT (see e.g., *Matter of Nellie G.,* 38

A.D.3d 547, 831 N.Y.S.2d 473 [2d Dept. 2007], Matter of Daniel TT., 39 A.D.3d 94, 830 N.Y.S.2d 827 [3d

Dept. 2007]; *Matter of Albert S.,* 286 A.D.2d 684, 730 N.Y.S.2d 128 [2d Dept. 2001] ). Mrs. Card has two

daughters that would have been overjoyed to care for their mother. LaDonna is a Physician Assistant and

Cindy is an Ordained Minister.

40.     If Mrs. Card were incapacitated, which she was not, the mandate of Article 81 is that the Court must

consider AIP'S PERSONAL WISHES, PREFERENCES, AND DESIRES, ALLOWING HER TO MAKE

THE DECISIONS AFFECTING HER LIFE, to the extent she has or can. MHL § 81.01; *In re Matter of*

*Cheryl B. K.,* 45 Misc.3d 1227 (A), 2012 WL 11967484 (Sup Ct, Broome County 2012). **THE COURT**

**MUST BE CAREFUL NOT TO UNDULY SUBSTITUTE ITS JUDGMENT, OR THAT OF OTHERS,**

**FOR AIP'S JUDGMENT.** Cheryl B. K., supra; Matter of Williams, 194 Misc. 2d, 793, 755 N.Y.S.2d 818

(Sup. Ct., Suffolk County 2003). Article 81 cases are replete with references to RESPECTING THE AIP'S

WISHES to the extent possible. *Williams, supra*; *Cheryl B. K., supra; In re Pflueger,* 181 Misc. 2d, 294, 693

N.Y.S.2d 419 (Sur. Ct., New York County 1999). The Court should "approve any acts as long as it falls

within the range of reasonable actions for a given situation." *Pflueger, supra,* at 299, 693 N.Y.S.2d 419.

Whether to appoint a guardian is a matter of discretion requiring the Court to determine if the AIP actually

needs one. *Matter of Daniel TT,* 39 A.D.3d 94, 830 N.Y.S.2d 827 (3rd Dept. 2007).

41.     As the Supreme Court recognized almost a century ago, the liberty protected by the constitution

encompasses "not merely freedom from bodily restraint but also the right of the individual to contract, to

engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children ... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" (*Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 [1923]; see also *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 [1954] ). (Although *777 the Court has not assumed to define " liberty" with any great precision, the term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective [id. at 499–500, 74 S.Ct. 693].)

42.     Here, contrary to the Supreme Court's determination, the record does not contain clear and convincing evidence that Ella Card was incapacitated and in need of a guardian to manage her financial affairs (see *Matter of Deborah P. [Marie F.],* 133 A.D.3d 602, 604, 18 N.Y.S.3d 710; cf. *Matter of Perl [Evans],* 77 A.D.3d 525, 525–526, 910 N.Y.S.2d 52; Matter of Lee I., 265 A.D.2d 750, 752, 697 N.Y.S.2d 385). Accordingly, the Supreme Court should grant this motion to terminate the guardianship (see *Matter of Deborah P. [Marie F.],* 133 A.D.3d at 604, 18 N.Y.S.3d 710; Matter of Penson, 289 A.D.2d 155, 155, 735 N.Y.S.2d 51; cf. *Matter of Perl [Evans],* 77 A.D.3d at 525–526, 910 N.Y.S.2d 52; *Matter of Lee I.,* 265 A.D.2d at 752, 697 N.Y.S.2d 385).

## II. ARGUMENT
## DEPRIVATION OF CIVIL RIGHTS 18 USC § 242

43.     Under 18 U.S. Code § 242 - Deprivation of Rights, Ella Card has been deprived of her rights under color of law. Under section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. For the purpose of Section 242, acts under "color of law" include acts not only done by federal, state, or local officials within their lawful authority, but also acts done beyond the bounds of that official's lawful authority if the acts are done while the official is purporting to or pretending to act in the performance of his/her official duties. Persons acting under color of law within the meaning of this statute include police officers, prisons guards and other law enforcement officials, as well as judges, care providers in public health facilities, and

others who are acting as public officials. It is not necessary that the crime be motivated by animus toward the race, color, religion, sex, handicap, familial status, or national origin of the victim. The offense is punishable by a range of imprisonment up to a life term, or the death penalty, depending upon the circumstances of the crime, and the resulting injury, if any.

## III. ARGUMENT
## CIVIL ACTION FOR DEPRIVATION OF RIGHTS 42 U.S. CODE § 1983.

44.     Under 42 U.S. Code § 1983.Civil action for deprivation of rights. Ella Card has been  deprived of her Civil Rights, where every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## IV. ARGUMENT
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS 42 USC § 1985

45.     Under 42 U.S. Code § 1985.Conspiracy to interfere with civil rights, Ella Card was intentionally denied her civil rights by the Vera Institute, Christine Mooney, Judge Betsy Barros and Others where if two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws.

## V. ARGUMENT
## ACTION FOR NEGLECT TO PREVENT 42 U.S.C. § 1986

46.     Under 42 U.S. Code § 1986 Action for neglect to prevent. Every person who, having knowledge that any of the wrongs conspired to be done against Ella Card, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefore, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

## VI. ARGUMENT
## EIGHTH AMENDMENT OF THE US CONSTITUTION

47.     Under the Eighth Amendment of the US Constitution, Cruel and Unusual Punishment, stripping Ella Card of her liberty and property rights after working as a schoolteacher for over 39 years is cruel and unusual punishment. The Vera Institute and this Court has stolen Ella Cards life saving. Ella had to flee the State of New York for her freedom. Like a Slave, if she did not flee the Vera Institute and this Court would have drugged her up psychotropic medications and murdered her, no difference than hanging from a tree. This Court has committed Crimes Against Humanity Cruel and Unusual punishment for a Successful Black woman that made it to the top.

## VII. ARGUMENT
## THE HOBBS ACT

48.    The Hobbs Act prohibits actual or attempted robbery or extortion affecting interstate or foreign commerce "in any way or degree." Section 1951 also proscribes conspiracy to commit robbery or extortion without reference to the conspiracy statute at 18 U.S.C. § 371. The statutory prohibition of "physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section" is confined to violence for the purpose of committing robbery or extortion. *United States v. Franks*, 511 F.2d 25, 31 (6th Cir. 1975) (rejecting the view that the statute proscribes all physical violence obstructing, delaying, or affecting commerce as contrasted with violence designed to culminate in robbery or extortion).

49.    The Hobbs Act: The extortion of Ella Card's Property including her Social Security Money and her Teachers Retirement Fund, rent from her apartments and stores, these offenses reach both the obtaining of property "under color of official right" by public officials and the obtaining of property by private actors with the victim's "consent, induced by wrongful use of actual or threatened force, violence, or fear," including fear of economic harm. See this Manual at 2405 and *Evans v. United States*, 504 U.S. 255, 265, 112 S. Ct. 1181, 1188 (1992) (only a private individual's extortion of property by the wrongful use of force, violence, or fear requires that the victim's consent be induced by these means; extortion of property under color of official right does not require that a public official take steps to induce the extortionate payment).

50.    Although the Hobbs Act was enacted in 1946 to combat racketeering in labor-management disputes, the extortion statute is frequently used in connection with cases involving public corruption, commercial disputes, and corruption directed at members of labor unions. Proof of "racketeering" as an element of Hobbs Act offenses is not required. United States v. Culbert, 435 U.S. 371, 98 S. Ct. 1112 (1978). However, a violation of the Hobbs Act may be part of a "pattern of racketeering activity" for purposes of prosecution under the Racketeer Influenced and Corrupt Organizations (RICO) statute (18 U.S.C. § 1961, et seq.).

### VIII. ARGUMENT
### RACKETEERING IN VIOLATION OF 18 USC § 1961- § 1964

51.    Racketeering in violation of 18 USC § 1961- § 1964: Where this Court, Judge Betsy Barros, the Vera Institute, Christine Mooney, John Holt and Others conspired to steal Ella Cards property, by Robbery, Extortion, Threatened, Committed Fraud against Ella Card and her Family, and Embezzled Ella's Pension

and Social Security funds and more. Under 18 USC § 1962, It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Under 18 USC § 1963 (a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both, and shall forfeit to the United States, irrespective of any provision of State law (1)any interest the person has acquired or maintained in violation of section 1962; (2)any—(A)interest in; (B)security of; (C)claim against; or (D)property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and (3)any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962. Under 18 USC § 1964, Civil Remedies, the district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons. (b)The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

## IX. ARGUMENT
### FEDERAL RULES OF CIVIL PROCEDURE RULE 60(b)(3)
### FRAUD ON THE COURT WHICH VOIDS THE ENTIRE CAPACITY HEARINGS

52.     Fraud on the court involves willful conduct that is deceitful and obstructionist, which injects misrepresentations and false information into the judicial process "so serious that it undermines ... the integrity of the proceeding" (*Baba–Ali v. State of New York*, 19 N.Y.3d 627, 634, 951 N.Y.S.2d 94, 975 N.E.2d 475 [2012]. It strikes a discordant chord and threatens the integrity of the legal system as a whole, constituting "a wrong against the institutions set up to protect and safeguard the public" (*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 [1944]; see also *Koschak v. Gates Constr. Corp.*, 225 A.D.2d 315, 316, 639 N.Y.S.2d 10 [1st Dept.1996] ["The paramount concern of this Court is the preservation of the integrity of the judicial process"] ). The federal courts have applied the clear and convincing standard in determining whether the offending party's actions constitute fraud on the court (see e.g. *319 *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 [1st Cir.1989] ). Characteristic of federal cases finding such fraud is a systematic and pervasive scheme, designed to undermine the judicial process and thwart the non-offending party's efforts to assert a claim or defense by the offending party's repeated perjury or falsification of evidence (id. at 1118). Fraud on the court warrants heavy sanctions, including the striking of an offending party's pleadings and dismissal of the action.

53.     Ella Card was fully Competent but the only way the Court and the Vera Institute could get her money was to rule incapacitated. The Court, the Vera Institute, the Court Investigator, the Attorneys, and the sons of Ella Card all committed Fraud on the Court. In Racketeering Scheme to steal her money. This whole case to date is a Product of Fraud on the Court.

54.     A finding of fraud on the court warrants termination of the proceedings in the nonoffending party's favor (see e.g. *McMunn,* 191 F.Supp.2d at 462 ["(defendant) deserves the harsh sanction of dismissal"]; *Shangold,* 2006 WL 71672, *5, 2006 U.S. Dist. LEXIS 748, *15 [plaintiffs' fabrication of evidence warrants dismissal]; *Hargrove v. Riley*, 2007 WL 389003, *11, 2007 U.S. Dist. LEXIS 6899, *37–39 [E.D.N.Y., Jan. 31, 2007, No. CV–04–4587 (DGT) ] [same]; *DAG Jewish Directories*, 2010 WL 3219292, *5, 2010 U.S. Dist. LEXIS 82388, *17 [same] ). For "when a party lies to the court and [its] adversary intentionally, repeatedly, and about issues central to the truth-finding process, it can fairly be said that [the party] has forfeited [the] right to have [the] claim decided on the merits" (*McMunn,* 191 F.Supp.2d at 445). **Therefore,**

**<u>Once A Court Concludes That Clear And Convincing Evidence Establishes Fraud On The Court, It
May Strike A Pleading And Enter A Default Judgment.</u>**

## X. ARGUMENT

**MRS. CARD WAS DENIED HER RIGHTS TO CHOOSE HER OWN COUNSEL IN VIOLATION
OF THE SIXTH AMENDMENT BECAUSE SHE WAS BEING DEPRIVED OF HER CIVIL
RIGHTS LIKE A PRISONER OR A SLAVE**

55.     The lower court intentionally denied Mrs. Card an own attorney of her choice, which was a structural

defect (a constitutional error that affects the framework of the trial), the United States Supreme Court has

held that the decision is not subject to a harmless error analysis, but tainted the entire capacity hearing,

including ineffective assistance of counsel. Judge Betsy Barros stated: "I already chose an attorney for your

mother; I think you will like her.

56.     Ella Card was denied the basic fundamental rights of due process, she was denied the right to her own

counsel. The court evaluator, Lisa Friedman in this matter, failed to properly perform the duties set forth in

Mental Hygiene Law § 81.09. The evaluator's role under article 81 is that of an independent investigator,

empowered to assist the court in independently assessing the totality of circumstances affecting the person

alleged to be incapacitated (AIP), determining the AIP's personal capabilities, marshalling the AIP's

resources, selecting, and empowering an appropriate guardian, and assuring that the due process rights of the

AIP are not violated. The evaluator's duties include, inter alia, meeting with the AIP (MHL § 81.09 [c] [1] ),

explaining the nature and possible consequences of the proceeding and the AIP's right to counsel (MHL §

81.09[c][2] ), determining whether legal counsel should be appointed for the AIP (MHL § 81.09[c][3] ),

interviewing the petitioner (MHL § 81.09[c][4] ), and issuing a written report and recommendations to

address a lengthy list of specific questions and issues set out in the statute (MHL § 81.09[c][5] ).  In the

matter at bar, the evaluator's investigation and recommendations failed to perform adequately several of the

most crucial of these duties, including the personal assessment of Ms. Card's wishes, recommendation on the

appointment of counsel, Ella was entitled to choose an attorney of her own but Judge Betsy Barros and Lisa Friedman  froze her money, so she could not have attorney of her choosing and Judge Betsy Barros forced her to have attorney Christine Mooney where she was Ineffective Counsel.

## XI. ARGUMENT
### INEFFECTIVE ASSISTANCE OF COUNSEL
### BY CHRISTENE MOONEY AND PAUL OBRIEN

57.     A more critical error in this case was Mrs. Card was denied the right to choose her own counsel. Under Article § 81.11 Hearing (a) A determination that the appointment of a guardian is necessary for a person alleged to be incapacitated shall be made only after a hearing. (b) In a proceeding brought pursuant to this article any party to the proceeding shall have the right to: 1. present evidence. 2. call witnesses, including expert witnesses; 3. cross examine witnesses, including witnesses called by the court; 4. be represented by counsel of his or her choice.

58.     Judge Betsy Barros denied Mrs. Card the right to choose her own attorney, so she could not hire her own attorney of her choice, the Court forced her to have Christine Mooney. Christine Mooney failed to represent Mrs. Card. She should have subpoenaed Mrs. Card medical doctor or hired a psychiatrist, She did not present any witnesses, she did not cross examine anyone, she did not call witnesses, she did not protect Mrs. Card fundamental rights of due process, which were violated throughout the capacity hearing. Outside the hearing Christine Mooney cried in front of Mrs. Card, Cindy and LaDonna and stated, "if your angry be angry with me, it is my fault, you can win this on appeal." This was a Breach of Fiduciary Duty and Breach of Contract and Ineffective Assistance of Counsel.

59.     On the July 21, 2020, hearing for guardianship over Mrs. Card's property, the Petitioners were not notified of the hearing, therefore the hearing was held *ex-parte*. Paul O'Brien was hired to represent Mrs. Card at the hearing, however, on the day the hearing Paul O'Brien quit immediately prior to the hearing and did not  represent Mrs. Card, which is a Breach of Fiduciary Duty and Breach of Contract. The courts have repeatedly affirmed that "an attorney stands in a fiduciary relation to the client." (*Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y.2d 112, 118, 629 N.Y.S.2d 1009, 653 N.E.2d 1179 [1995].) As a fiduciary, an attorney "is charged with a high degree of undivided loyalty to his client." (*Matter of Kelly v. Greason,*

23 N.Y.2d 368, 375, 296 N.Y.S.2d 937, 244 N.E.2d 456 [1968].) "The representation of conflicting or adverse interests may constitute professional misconduct." (Id.) While an attorney's conflict of interest may be actionable under a cause of action for malpractice (see, e.g., *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc*., 10 A.D.3d 267, 780 N.Y.S.2d 593, supra ), a conflict of interest may also be actionable as a breach of fiduciary duty. (See *Sage Realty Corp. v. Proskauer Rose L.L.P.,* 251 A.D.2d 35, 675 N.Y.S.2d 14, supra.)

60.     The right to counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. It has been interpreted to mean the right to effective counsel: "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771, n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). "In an adversarial system of justice, the fundamental right to the effective assistance of counsel is essential to a criminal defendant's due process entitlement to a fair trial." *People v. Dean,* 50 A.D.3d 1052, 856 N.Y.S.2d 649 (2d Dept. 2008), citing *People v. Benevento*, 91 N.Y.2d 708, 711, 674 N.Y.S.2d 629, 697 N.E.2d 584 (1998). The mandate for effective assistance of counsel generally means "the reasonably competent services of an attorney devoted to the client's best interests." *People v. Ortiz,* 76 N.Y.2d 652, 655-656, 563 N.Y.S.2d 20, 564 N.E.2d 630 (1990); see also *People v. Bennett*, 29 N.Y.2d 462, 466, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972) (the right "means more than just having a person with a law degree nominally represent [defendant] upon a trial and ask questions").

61.     As the Supreme Court noted in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Under federal law, a defendant claiming ineffective assistance of counsel must show first that defense counsel's performance was deficient. Second, a defendant must also show that he was prejudiced. Prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. 2052.

62.     Under New York law, the standard for ineffective assistance of counsel is whether defendant received "meaningful representation." *People v. Baldi,* 54 N.Y.2d 137, 146-147, 444 N.Y.S.2d 893, 429 N.E.2d 400

(1981). While the state standard also has a prejudice component, " 'prejudice' is examined more generally in the context of whether defendant received meaningful representation." *People v. Benevento*, 91 N.Y.2d 708, 713, 674 N.Y.S.2d 629, 697 N.E.2d 584 (1998). This standard thus focuses on "the fairness of the process as a **881 whole rather than its impact on the outcome of the case." Id. at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584.The question is whether "the representation of a defendant by his assigned lawyer was so inadequate and ineffective as to deprive him of a fair trial." *People v. Bennett*, 29 N.Y.2d 462,464, 329 N.Y.S.2d 801, 280 N.E.2d 637 (1972).

63.     Because the right to effective assistance of counsel is so fundamental to our system of justice, the harmless error doctrine is not applied to cases of "substantiated claims of ineffective assistance." *People v. Benevento, supra* at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 citing *People v. LaBree*, 34 N.Y.2d 257, 260, 357 N.Y.S.2d 412, 313 N.E.2d 730 (1974). Whether a defendant would have been acquitted of the charges but for counsel's errors is "relevant, but not dispositive" under the state standard of ineffective assistance of counsel. The Court of Appeals has stated that the constitutional safeguards must be applied in all cases to be effective, and therefore the judicial system must be concerned as much with the integrity of the judicial process, as it is with the issue of a defendant's guilt or innocence. *People v. Benevento, supra* at 714, 674 N.Y.S.2d 629, 697 N.E.2d 584 citing *People v. Donovan*, 13 N.Y.2d 148, 153-154, 243 N.Y.S.2d 841, 193 N.E.2d 628 (1963).

## XII. ARGUMENT VIOLATION OF THE 14TH AMENDMENT
## THE DUE PROCESS CLAUSE

64.     Ella Card has been denied every basic fundamental right by the Court. Ella argues that she is competent and has always been competent for the past ten years. Ella states that she has been denied her liberty and property without due process of law and this case is a product of Fraud on the Court. Both the federal and New York State Constitutions guarantee procedural and substantive due process in a person's dealings with federal, state, and local governments. See U.S. Const., Amends. V ("No person shall ... be deprived of life, liberty, or property, without due process of law") & XIV ("nor shall any State deprive any

person of life, liberty, or property, without due process"), N.Y. Const., Art. I, § 6 ("No person shall be deprived of life, liberty or property without due process of law").

65.    Mrs. Card was denied Procedural due process protection, which would have  afforded her notice (hopefully in advance) of a possible deprivation of life, liberty or property by the government, and a meaningful opportunity to contest the deprivation prior to its imposition (or if not prior to, in a time and manner that itself will afford sufficient redress if the deprivation is found to be unconstitutional). "The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." *Mathews v. Eldridge*, 424 U.S. 319, 349, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal citations omitted).

66.    By contrast, a claim of a substantive due process violation bars "certain government actions regardless of the fairness of the procedures used to implement them." *County of Sacramento v. Lewis,* 523 U.S. 833, 840, 118 S. Ct. 1708, 1713, 140 L.Ed.2d 1043 (1998) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L.Ed.2d 662 (1986))

67.    We have emphasized time and again that "the touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, [2976], 41 L.Ed.2d 935 (1974), whether the fault lies in a denial of fundamental procedural fairness, see, e.g., *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972) (the procedural due process guarantee protects against "arbitrary takings"), or in the exercise of power without any reasonable justification in the service of a legitimate governmental *778 objective, see, e.g., *Daniels v. Williams*, 474 U.S. at 331, 106 S. Ct. 662 (the substantive due process guarantee protects against government power arbitrarily and oppressively exercised). Due process protection in the substantive sense limits what the government may do in both its legislative, see, e.g., **842 *Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1965), and its executive capacities, see, e.g., *Rochin v. California*, 342 U.S. 165, 72 S. Ct. 205, 96 L.Ed. 183 (1952), [and] criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue.

## XIII. ARGUMENT

### THE MORE CIVIL RIGHTS YOU HAVE TO LOSE, THE COURTS MUST PROVIDE A FULL AND FAIR HEARING TO ENSURE YOU ALL DUE PROCESS RIGHTS ARE DUE THIS COURT VIOLATED ALL OF MRS. CARD'S FUNDAMENTAL RIGHTS

68.    If a person such as Mrs. Card, is an honest, hardworking, law abiding, highly functional, intelligent woman that was going to lose all of her Civil Rights, being stripped of all her Civil Rights, less rights than a Slave, because she was allegedly incapacitated, then Ella should have had a full hearing, her medical doctors and psychiatrist there to testify whether she is competent or incapacitated and Ella was not afforded these rights. A Bias and Prejudice Court which had a motive to rule Ella incapacitated, she was wealthy, a smart businesswoman, and Vera institute and the Court wanted her money. The Court failed to render due process, to Ella Card and this case is a product of Fraud on the Court. This was a violation of New York Laws Public Health Article 29CC: Family Health Care Decision Act, Section 2994C.

### XIV. A TRUE MANIFEST INJUSTICE

69.    This Case is an excellent case of a Manifest Injustice. A Manifest injustice means something which is 'obviously unfair' or 'shocking to the conscience.' It refers to an unfairness that is direct, obvious, and observable where the outcome in this case is plainly and obviously unjust, denied Mrs. Card an attorney of her choice, no medical doctor ever evaluated Mrs. Card, it was judge Betsy Barros that ruled Mrs. Card incapacitated, numerous violation due process, numerous *ex-parte* hearings, no accounting by the Vera Institute, which should be yearly because they cannot justify the money that has been taken. This Court was used as a Racketeering Operation and the lower court has stripped her of Liberty and Property for the past 10 years. Chief Justice Rehnquist has further expounded: Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, "deeply rooted in this Nation's history and tradition," id., at 503 (plurality opinion); *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934) ("so rooted in the traditions and conscience of our people as to be ranked as fundamental"), and "implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed," *Palko v. Connecticut*, 302 U.S. 319, 325, 326, 58 S. Ct. 149, 82 L.Ed. 288 (1937). Second, we

have required in substantive-due-process cases a "careful description" of the asserted fundamental liberty interest. *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L.Ed.2d 261 (1992); *Cruzan v. Director, Missouri Dept. of Health, supra,* 497 U.S. 261, 277–278, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). Our Nation's history, legal traditions, **843 and practices thus provide the crucial "guideposts for responsible decision making," *Collins, supra*, at 125, 112 S.Ct. 1061, that direct and restrain our exposition of the Due Process Clause. As we stated recently in Flores, the Fourteenth Amendment "forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." 507 U.S. at 302, 113 S. Ct. 1439.

## XV.  TERMINATION OF  GUARDIANSHIP OF THE PROPERTY OF MRS. CARD

70.     In determining whether the termination of a guardianship is in the best interest of the individual, courts have considered whether it is the least restrictive means to preserve and protect the rights of the person (see *Matter of Michael J.N.,* 2017 NY Misc. LEXIS 5104).

71.     The intention of the drafters of Article 81 was that a guardianship be used as a last resort (see e.g., *Matter of Nellie G.,* 38 A.D.3d 547, 831 N.Y.S.2d 473 [2d Dept. 2007], Matter of Daniel TT., 39 A.D.3d 94, 830 N.Y.S.2d 827 [3d Dept. 2007]; *Matter of Albert S.,* 286 A.D.2d 684, 730 N.Y.S.2d 128 [2d Dept. 2001] ). The statute not only requires that the court explore all other available resources and alternatives before a guardian is appointed, but it also requires that the petition itself must allege the unavailability of such other alternatives or resources (see Mental Hygiene Law § 81.08[a][14] ).

72.     MHL § 81.36(d) provides that when a party seeks to terminate a guardianship, the burden of proof shall be on the person objecting to such relief to establish by clear and convincing evidence that the guardianship should not be terminated. See *Matter of Marvin W.,* 306 A.D.2d 289, 760 N.Y.S.2d 337 (2d Dept. 2003); *Matter of Rebecca P.,* 24 Misc.3d 1222(A), 2009 WL 2170239 (Sup. Ct., N.Y. County 2009).

73.     In a recent Manhattan Guardianship case entitled *Matter of Banks v. Richard A*., decided on April 26, 2019, Supreme Court Justice Lillian Wan, terminated a Guardianship.  The case is particularly interesting because the incapacitated person had originally consented to the Guardianship.  With regard to the

termination, the Court took the position that in order to oppose the termination, the opposing party needed to seek a Guardianship by presenting clear and convincing evidence that the person was incapacitated. Here we have numerous medical reports that Mrs. Card was fully competent and not incapacitated. In Banks, there was no determination of incapacity because of the initial consent. The Court determined that in this type of case involving a consensual Guardianship it was not sufficient to just oppose the termination by only showing that the appointment of a Guardian is necessary.

74.     When a judge acts as a trespasser of the law, when a judge does not follow the law, the judge loses subject-matter jurisdiction and the judge's orders are void, of no legal force or effect. The U.S. Supreme Court, in *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct.

75.     The U.S. Supreme Court, in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original]. By law, a judge is a state officer. The judge then acts not as a judge, but as a private individual (in his person). The U.S. Supreme Court has stated that "No state legislator or executive or judicial officer can war against the Constitution without violating his undertaking to support it.".


## XVI.   CASE EQUATES TO MANIFEST INJUSTICE AGAINST MRS ELLA CARD

Our case law equates manifest injustice with the plain error standard of review." ▰ *United States v. Quintana,* 300 F.3d 1227, 1232 (11th Cir.2002). To demonstrate manifest injustice, the petitioner shows: (1) there was error; (2) that was plain; (3) that affected her substantial rights; and (4) that affected the fundamental fairness of the proceedings. *Id.* In *United States v. Prouty,* 303 F.3d 1249, 1253 (11th Cir.2002). We hold that the New York Supreme court committed numerous plain errors when it deprived Petitioners of their fundamental due process rights, denied petitioners of their life, liberty and property,

WHEREFORE, we pray that this Honorable Court will Protect Mrs. Card's Civil Rights from further being violated and to protect Mrs. Card's Property, which she has worked a lifetime to achieve. We pray this Honorable court void the Guardianship of the Property, which is Void Ab Initio because of Fraud and due process violations by the Brooklyn Supreme court and its officers. We also pray this Honorable court place an immediate stay on all Brooklyn Supreme court proceedings associated with CASE 100016/11. That this court move jurisdiction of this matter from New York to Pennsylvania. That this Honorable court place an immediate stay on the use of Mrs. Ella Card's funds by the Brooklyn Supreme court, officers of its court, guardians of current and prior record. We pray this Honorable court award petitioners $25 million a year for each of the 10 years this illegal guardianship has been placed on Mrs Ella Card and provide a permanent Order of Protection for Mrs. Ella Card against Raymond and Kermit Card.

Under penalties of perjury, I declare that I have read the foregoing and that the statement of fact contained therein are true.

Ken Swenson

Dated this 22 of July 2021                              Respectfully submitted,

Ken Swenson

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy was served on Judge Betsy Barros, Judge Leon Ruchelsman, John Holt, Julie Fernandez at