IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ELLA CARD, KEN SWENSON,
CINDY CARD AND LADONNA CARD

CIVIL NO. 1:21-CV-01288

Plaintiff,

EMERGENCY COMPLAINT
PLAINTIFFS REOUEST
EMERGENCY DECLATORY
RELIEF UNDER
RULE 57 AND EMERGENCY
INJUNCTION UNDER RULE 65

v.

DEFENDANTS: THE VERA INSTITUTE OF JUSTICE.
NICHOLAS TURNER President of the Vera Institute and in individual capacity; JOHN HOLT Attorney for the Vera Institute and in individual capacity; KIMBERLY GEORGE Director for the Vera Institute and in individual capacity; LAURA NEGRON Former Director for the Vera Institute and in individual capacity; LISA FRIEDMAN, ESQ Court Evaluator and in individual capacity; ALEXANDRA SCHONFELD Court Evaluator and in individual capacity; JUDGE BETSY BARROS, as Judge and in individual capacity; JUDGE LEON RUCHELSMAN, as Judge and in individual capacity. CHRISTINE MOONEY Court Appointed Attorney for Ella Card and in individual capacity; PAUL O'BRIEN Attorney, Falcon Rappaport & Berkman, PLLC for Ella Card and in individual capacity; DAVID VAN LEEUWEN Attorney, Peyrot & Associates for Petitioners and in individual capacity; BONNIE BERNSTEIN, Polizzotto and Polizzotto Attorney for Raymond and Kermit Card and in individual capacity; JULIE STOIL FERNANDEZ Attorney, Finkel & Fernandez, LLP, and in individual capacity; RAYMOND CARD Illegal Guardian of Property Disowned/Estranged Son of Ella Card; KERMIT CARD Illegal Guardian of Property Disowned/Estranged Son of Ella Card; KINGS COUNTY, New York; Judge LAWRENCE KNIPEL, Administrative Law Judge, STATE OF NEW YORK: NYC Health Benefits (OLR) IRMAA, UFT, 52 Broadway, New York, NY10004, EDDIE & ARLENE TORRES, Saratoga Deli, Progressive General Contractors

FILED
HARRISBURG, PA

OCT 2 5 2021

PER _____
DEPUTY CLERK

Defendants.

1

# EMERGENCY COMPLAINT
## PLAINTIFFS REQUEST EMERGENCY DECLATORY RELIEF UNDER RULE 57 AND EMERGENCY INJUNCTION UNDER RULE 65

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby applies to this Court for a temporary restraining order ("TRO") with other equitable relief. This verified complaint clearly shows that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard. Supporting the emergency nature of this complaint please note that the lower court has had numerous *ex-parte* hearings without notifying the plaintiffs and will continue to do so in order to liquidate Plaintiff's assets against Mrs Cards wishes in violation of her due process rights. In support of the motion, Plaintiff states as follows:

1. Plaintiff brings this action to halt Defendants' ten-day eviction notice from the illegal Co-Guardians (which were appointed in a secret *ex-parte* hearing) ordered by Judge Ruchelsman. See **Exhibit A and B.**

2. However, on September 2, 2021, Governor Kathy Hochul signed into law a new moratorium on COVID-related residential and commercial evictions for New York State which is in effect until January 15, 2022. Please see **Exhibit C.**

3. In an *ex-parte* hearing, three days after Judge Ruchelsman received the Federal Lawsuit, he ordered that Mrs. Card's homes of 50 years, with no mortgage and being maintained by the Plaintiff's, ordered the homes to be sold against Mrs. Card wishes.

4. On July 21, 2020, the Co- Guardians were appointed in a secret *ex-parte* hearing, where Mrs. Card and the Plaintiffs were never notified by the Court of that hearing and her attorney dropped out of the case, minutes before the hearing, and the estranged (disowned) sons of eleven years were appointed, against Mrs. Card' wishes. Mrs. Card placed a restraining order against them. They have a lifelong history of crack cocaine and alcohol abuse, with domestic violence and

four Bankruptcies, and do not qualify as Guardians under Article 81, Mental Hygiene laws. The Guardianship program is to preserve Mrs. Card's estate, not liquidate her estate which is contrary from Article 81 MHL. Article 81 MHL is to preserves estate and stop misappropriation.

5. The Defendants are moving fast to liquidate the estate and to steal what Mrs. Card has worked a lifetime to achieve.

6. The guardians continue to be negligent in not paying Ella Cards taxes on her home at 155 Saratoga Ave; they have failed to pay the electric bills for both homes since January of 2021 when appointed as guardians resulting in receipt of a electric turn-off-notices effective September 30, 2021.

7. The guardians have also been negligent to perform maintenance and pay for home owners' insurance. In order to continue to live in the homes, family members have had to pay home-owners insurance and perform maintenance on both homes at their own expense over the past 3 years alone.

8. Plaintiffs sue Defendants and allege that the Guardianship of Ella Card is *void ab initio*, since Judge Betsy Barros ruled Ella Card incapacitated in a secret *ex-parte* hearing, approximately a month before Ella Card ever stepped foot inside her courtroom, according to documents recently received from the Pennsylvania Social Security Administration on July 22, 2021. **EXHIBIT D**. Also, the fact that Ella Card was never evaluated by a court appointed Psychiatrist, licensed by the state of New York, voids the entire Guardianship, according to New York State Law, Public Health Laws Article 29-CC: Family Health Care Decision Act Section 2944-C, and therefore under Federal Rules of Civil Procedure Rule 60(b)(4) the Guardianship of the Person and Property of Mrs. Card is *void ab initio*.

9. Ella Card was never incapacitated, and once she went to the Pennsylvania Social Security Administration in 2017, the Social Security Administration immediately seen she was fully competent and started sending her money to her home in York County Pennsylvania and currently investigating the Vera Institute for fraud.

10. We are asking for the Emergency termination of the guardianship of Ella Card and requesting that Ken Swenson and Cindy Card, husband and wife, take care of their mother's home and assets, immediately for the above and following reasons:

11. In these two related actions, the motion court properly denied plaintiff's motions for default judgments on the basis of lack of jurisdiction. Once the underlying actions were removed to the United States District Court for the Southern District of New York by the filing of the notice of removal with the state court, the state court no longer had jurisdiction to rule on plaintiff's motions (see 28 U.S.C. § 1446; Clayton v. American Fedn. of Musicians, 243 A.D.2d 347, 664 N.Y.S.2d 534 [1st Dept.1997] ). The notice of removal was timely and properly filed (see 28 U.S.C. § 1446), and the District Court has original jurisdiction over claims alleging violations of federal statutes, as well as supplemental jurisdiction over the state claims, including the Judiciary Law § 487 claims, since they arose out of the same case or controversy (see 28 U.S.C. §§ 1331, 1367[A], 1441[a]; Eastern States Health & Welfare Fund v. Philip Morris, Inc., 11 F.Supp.2d 384, 388 [S.D.N.Y.1998] ). 2Furthermore, the court properly exercised its discretion in enjoining plaintiff from making any further motions in these actions without prior court approval given the frivolous motions she continued to file even after the action was removed to federal court, and after the motion court concluded that it lacked subject matter jurisdiction (see Bikman v. 595 Broadway Assoc., 88 A.D.3d 455, 930 N.Y.S.2d 435 [1st Dept.2011], lv. denied 21 N.Y.3d 856, 2013 WL

2350333 [2013]; Jones v. Maples, 286 A.D.2d 639, 731 N.Y.S.2d 356 [1st Dept.2001], lv. dismissed 97 N.Y.2d 716, 740 N.Y.S.2d 690, 767 N.E.2d 147 [2002] ).

12. As detailed in the Federal Removal and Lawsuit, there is a substantial likelihood that Plaintiffs will succeed on the merits of its claims against the Defendants; that without a preliminary injunction and temporary restraining order, there is substantial risk that Plaintiffs will suffer irreparable harm; that the balance of harms weighs in favor of Plaintiffs; and the requested preliminary injunction and temporary restraining order will not adversely affect the public interest but protect the public interest.

13. This emergency motion is being filed by Plaintiff's, in order to avoid irreparable harm and need the requested relief in less time than is normally required by the Court.

14. Plaintiffs' own homes located at 161 Saratoga Ave and 155 Saratoga Ave Brooklyn, NY 11233.

15. Cindy Card, daughter of Ella Card, has lived at 161 Saratoga Avenue for the past 35 years. Over the last ten years, because of the Vera Institute, Cindy Card has had to live without heat and without hot water due to the Vera Institutes negligence and abuse, to force her out of her home, so the Vera Institute can sell the home and steal the profits.

16. Ella Card has lived with Ken Swenson for the past ten years, he has taken care of her medical bills, transportation, taken her to doctors' appointments, shopping excursions and general quality of life, since the Vera Institute has denied Ella Card her New York School Teachers Pension and her Social Security money, where she had no money to live on. She was stripped of all her assets after she saved and invested her money well, to live the lifestyle she worked hard for as a New York School Teacher for 39 years.

17. On September 15, 2021, the Plaintiff's filed a Lawsuit and Federal Removal in the Guardianship of Ella Card, in which the entire Guardianship of Ella Card is *void ab initio*, due to due process violations and *prima facie* evidence of fraud.

18. Furthermore, the actual "Mock" capacity hearing was held in April of 2011, where Judge Betsy Barros did not rule or file an order in this case till 8 months later on December 14, 2011, in violation of Article 81, the order must have been entered within 7 days of the hearing date and therefore again the Guardianship of the Person & Property is *void ab initio* and Mrs. Card was no longer of resident of New York and therefore the Judge lacked jurisdiction and is a void order and a Product of fraud on the court. Since all the orders of the lower court are *void ab initio*, and the lower court lacked subject matter jurisdiction and personal jurisdiction (Mental Hygiene Law § 81.08[a][14]) the United States Middle District of Pennsylvania has a legal obligation to protect Mrs. Card since she has been a resident of Pennsylvania for past seven years.

19. Meantime, Plaintiffs have maintained both homes, with their own personal money and without the use of Ella Cards money for the last ten years. Ken, Cindy and LaDonna card spent their own money on repairs and other expenses.

20. Since that time, newly discovered evidence that the taxes on our home at 155 Saratoga Ave have not been paid and are now late, for an amount of $4,222.65. The Defendants, the Vera Institute of Justice Guardianship project, Raymond Card, Kermit Card and Judge Leon Ruchelsman, all have been reckless in squandering Ella Cards money by paying bills late, which accrue unnecessary interest and depleting the estate of Ella Card. **Exhibit E**

21. On October 2, 2021, we received our electric bill for 161 Saratoga Ave in the mail, which has not been paid for over 6 months for a total of $1,101.80, which was supposed to be disconnected on September 30, 2021. **Exhibit F**

22. On October 2, 2021, we received our electric bill for 155 Saratoga Ave in the mail, which has not been paid for over 8 months for a total of $2,305.36, which was supposed to be disconnected on September 30, 2021. **Exhibit G**

23. In 2011, 2015, Cindy Card paid the home insurance premiums out of her own personal money. In 2017, the Vera Institute gave no accounting and in 2018 the Vera Institute paid five different Insurance companies a total $19, 608.98, cancelling with several companies, even after making payments. **Exhibit H**

24. Additionally, the Vera Institute has been paying T-Mobile/Verizon wireless company from Ella Cards account, for phone service she does not have, during the years of 2012 through 2018, based on the Vera Institute accounting records, they billed Ella Card $9,441.76. **Exhibit I**

25. Additionally, the Vera institute has paid Progressive General Contractor, Inc for snow removal and home repair services, which were never performed, in the amount of $55, 865.65. **Exhibit J**

26. As part of the Vera Institutes fiduciary duty, which were required to maintains the homes structural integrity and living quarters, they failed to do so, as a consequence Cindy Card and Ken Swenson were required to perform maintenance themselves from their own financial resources in the amount of $79,182.00 plus.

27. Under Article 81.32, since the Vera Institute and now the current guardians, Raymond and Kermit Card failed to give an initial report and an annual accounting in 2020, they should be removed for failure to file the annual accounting and inventory records.

28. Under § 81.35 Removal of guardian, upon motion, the court appointing a guardian may remove such guardian when the guardian fails to comply with an order, is guilty of misconduct, or for any other cause which to the court shall appear just. Notice of motion shall be served on the

guardian and persons entitled to receive notice pursuant to paragraph three of subdivision (c) of section 81.16 of this article. The motion may be made by the person examining initial and annual reports pursuant to section 81.32 of this article, or by any person entitled to commence a proceeding under this article, including the incapacitated person. The court may fix the compensation of any attorney or person prosecuting the motion. It may compel the guardian to pay personally the costs of the motion if granted.

29.     A determination that a person is incapacitated under the provisions of Mental Hygiene Law Article 81 "must be based on clear and convincing evidence" (Mental Hygiene Law § 81.12[a] ). The lower court had no evidence.

30.     When a party seeks to **terminate a guardianship**, "the burden of proof shall be on the person objecting to such relief" (Mental Hygiene Law § 81.36[d] ). When a party seeks to terminate a guardianship, the burden of proof is on the person objecting to such relief to establish by clear and convincing evidence that the guardianship should not be terminated. N.Y. Mental Hygiene Law § 81.36(d).

31.     The lower court violated Mrs. Card's civil rights and due process rights of the fourteenth amendment, which prohibits the states from depriving "any person of life, liberty, or property, without due process of law."

32.     Under New York MHL Article § 81.01, the LEAST RESTRICTIVE means to preserve and protect the rights of the person (see Matter of Michael J.N., 2017 NY Misc. LEXIS 5104). The intention of the drafters of Article 81 was that a guardianship be used as a LAST RESORT (see e.g., Matter of Nellie G., 38 A.D.3d 547, 831 N.Y.S.2d 473 [2d Dept. 2007], Matter of Daniel TT., 39 A.D.3d 94, 830 N.Y.S.2d 827 [3d Dept. 2007]; Matter of Albert S., 286 A.D.2d 684, 730

N.Y.S.2d 128 [2d Dept. 2001] ). Mrs. Card has two daughters that would have been overjoyed to care for their mother. LaDonna is a Physician Assistant and Cindy is an Ordained Minister.

33.     If Mrs. Card were incapacitated, which she was not, the mandate of Article 81 is that the Court must consider AIP'S PERSONAL WISHES, PREFERENCES, AND DESIRES, ALLOWING HER TO MAKE THE DECISIONS AFFECTING HER LIFE, to the extent she has or can. MHL § 81.01; In re Matter of Cheryl B. K., 45 Misc.3d 1227 (A), 2012 WL 11967484 (Sup Ct, Broome County 2012). **THE COURT MUST BE CAREFUL NOT TO UNDULY SUBSTITUTE ITS JUDGMENT, OR THAT OF OTHERS, FOR AIP'S JUDGMENT.** Cheryl B. K., supra; Matter of Williams, 194 Misc. 2d, 793, 755 N.Y.S.2d 818 (Sup. Ct., Suffolk County 2003). Article 81 cases are replete with references to RESPECTING THE AIP'S WISHES to the extent possible. Williams, supra; Cheryl B. K., supra; In re Pflueger, 181 Misc. 2d, 294, 693 N.Y.S.2d 419 (Sur. Ct., New York County 1999). The Court should "approve any acts as long as it falls within the range of reasonable actions for a given situation." Pflueger, supra, at 299, 693 N.Y.S.2d 419. Whether to appoint a guardian is a matter of discretion requiring the Court to determine if the AIP actually needs one. Matter of Daniel TT, 39 A.D.3d 94, 830 N.Y.S.2d 827 (3rd Dept. 2007).

34.     As the Supreme Court recognized almost a century ago, the liberty protected by the constitution encompasses "not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children ... and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men" (Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 [1923]; see also Bolling v. Sharpe, 347 U.S. 497, 74 S. Ct. 693, 98 L. Ed. 884 [1954] ). (Although *777 the Court

has not assumed to define " liberty" with any great precision, the term is not confined to mere freedom from bodily restraint. Liberty under law extends to the full range of conduct which the individual is free to pursue, and it cannot be restricted except for a proper governmental objective [id. at 499–500, 74 S. Ct. 693].)

35. Here, contrary to the Supreme Court's determination, the record does not contain clear and convincing evidence that Ella Card was incapacitated and in need of a guardian to manage her financial affairs (see Matter of Deborah P. [Marie F.], 133 A.D.3d 602, 604, 18 N.Y.S.3d 710; cf. Matter of Perl [Evans], 77 A.D.3d 525, 525–526, 910 N.Y.S.2d 52; Matter of Lee I., 265 A.D.2d 750, 752, 697 N.Y.S.2d 385). Accordingly, the Supreme Court should grant this motion to terminate the guardianship (see Matter of Deborah P. [Marie F.], 133 A.D.3d at 604, 18 N.Y.S.3d 710; Matter of Penson, 289 A.D.2d 155, 155, 735 N.Y.S.2d 51; cf. Matter of Perl [Evans], 77 A.D.3d at 525–526, 910 N.Y.S.2d 52; Matter of Lee I., 265 A.D.2d at 752, 697 N.Y.S.2d 385).

36. This Guardianship never served a purpose but destroyed Ella Card's life. Ella Card was paying her own bills and taking care of both homes, she did not want or need help from anyone but her two daughters Cindy and LaDonna Card. In June of 2011, Ella Card was forced to flee the state of New York like a runaway slave, in fear of her life, if not, the Vera Institute would have taken from her home, drugged her on psychotropic drugs, isolated her from her family and after all the money was gone, would have overdosed her on Seroquel, which causes electrical conduction abnormalities in the heart and sudden cardiac death. If it were not for Ken Swenson and Cindy Card, Ella Card would not be alive today.

37. This Emergency Motion is supported by a concurrently filed Federal Removal.

WHEREFORE, we pray this Honorable Court will Honor the wishes of Ella Card and terminate this Guardianship. Ella Card's daughter Cindy Card will take over all responsibilities along with

her husband Ken Swenson. We urgently need to secure our residence in the homes family has been a resident of for the past 50 years, pay the taxes on our home, stop all misappropriations and misuse of Ella Cards resources and pay both electric bills.

Dated this 25th day of October 2021

Respectfully Submitted,

Ken Swenson

## CERTIFICATE OF SERVICE

I Hereby Certify that the forgoing has been emailed to each of the Defendants, NICHOLAS TURNER nturner@nycourts.gov, sdemaio@nycourts.gov; JOHN HOLT jnholt@nycourts.gov, sdemaio@nycourts.gov; KIMBERLY GEORGE kgeorge@nycourts.gov, sdemaio@nycourts.gov; Alexandra Schonfeld Weaderhorn FAX: (516) 569 3360, Laura Negron LANEGRON@courts.state.ny.us; LISA FRIEDMAN lisafried@aol.com; Judge Betsy Barros ad2clerk@nycourts.gov, bbarros@nycourts.gov, BBARROS@courts.state.ny.us; Judge Leon Ruchelsman lruchels@nycourts.gov, mracanel@nycourts.gov; Christine Mooney chmesq@aol.com, clampersberger@aol.com; Paul O'Brien Pobrien@FRBLaw.com; Partick Marc Pmarc315@gmail.com; BONNIE BERNSTEIN/Gustow, bgustow@aol.com ; David Van Leeuwen david.vanleeuwen@peyrotlaw.com; JULIE STOIL FERNANDEZ jstoilfernandez@ffelderlaw.com; Lauren Shell aurenlshell@gmail.com ; Lawrence Knipel amy.luo@ag.ny.gov ; Ximena Castro Ximens.Castro@nysutmail.org; Governor of New York FAX: 212 416-6030; Letitia James FAX: 212 416-6030;   Raymond Card jstoilfernandez@ffelderlaw.com; Progressive General info@progressivegc.com; President of the Vera Institute kkeenan@vera.org ; Polizzotto and Polizzotto FAX: 718-256-0966; Clerk of Brooklyn Supreme Court, Kermit Card amthai@optonline.net, hyperboy209@msn.com.

Ken Swenson